# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# ST. LOUIS DIVISION

| | |
|---|---|
| JENNIFER MCGUIRE, Individually and For Others Similarly Situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ASCENSION HEALTH,<br><br>　　　　Defendant. | Case No. 4:23-cv-01552-MTS<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

## UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT AGREEMENT AND DISMISS WITH PREJUDICE AND MEMORANDUM IN SUPPORT

Plaintiff Jennifer McGuire ("McGuire" or "Plaintiff"), on behalf of herself and the Opt-In Plaintiffs (collectively, with McGuire "Plaintiffs"), files this Unopposed Motion for Approval of Settlement Agreement and Release ("Settlement Agreement") and in support would show as follows:

**1. Summary**

Plaintiff, on behalf of herself and the Opt-In Plaintiffs, and Defendant have reached a settlement with respect to this Fair Labor Standards Act ("FLSA") case, as memorialized in the Settlement Agreement filed attached as Exhibit 1. The Settlement Agreement represents the culmination of investigation, extensive litigation, and negotiations relating to the above-captioned lawsuit. If approved, the Settlement Agreement will provide meaningful relief to Plaintiffs.

This Settlement Agreement is the compromise of disputed claims and does not constitute an admission by Ascension of any violation of any federal, state, or local statute or regulation; of any violation of any of Plaintiffs' rights; or of any duty owed by Ascension to Plaintiffs. Ascension Health ("Ascension" or "Defendant") expressly denies Plaintiffs' claims and disputes Plaintiffs' entitlement to recover any damages, and disagrees with Plaintiffs as to, for example and without limitation: whether

Plaintiffs' automatic meal breaks were interrupted and if so, how often, the number of hours Plaintiffs actually worked; whether Plaintiffs worked off the clock; whether Plaintiffs were similarly situated; whether Defendant's alleged FLSA violations were made in good faith and on reasonable grounds; and whether Defendant's alleged FLSA violations were willful.

The Parties have entered into their Settlement Agreement as a compromise to avoid the risks, distractions, and costs that will result from further litigation. For these reasons, the Parties jointly request the Court approve the Parties' Settlement Agreement and allow the Parties to dismiss this action and the claims of Plaintiffs and all Opt-In Plaintiffs with prejudice.

**2. Introduction and Background**

On October 3, 2023, Plaintiff filed this collective action lawsuit on behalf of herself and a putative class of hourly, non-exempt Ascension employees who received automatic meal break deduction during the past three years (the "Putative Class Members"). *See generally* Doc. 1. Plaintiff alleges Ascension failed to pay her and the Putative Class Members for all hours worked via its (1) meal deduction policy, by which Ascension automatically deducted 30 minutes per day from its employees' time worked, despite requiring them to remain alert and on-duty; and (2) rounding policy, wherein Ascension rounded its employees' recorded time to the nearest quarter-hour. *Id.* Plaintiff's FLSA claims have been litigated for over a year; Ascension denies Plaintiff's allegations and raised several affirmative defenses, including that Ascension acted in good faith and its actions were not willful. Ascension denies Plaintiffs are entitled to any recovery for any claim asserted or that could have been asserted in this lawsuit.

After extensive litigation, the Parties agreed to stay, toll, and mediate on a potential nationwide basis. Ascension provided extensive, detailed time records and payroll information for each Opt-In Plaintiff to Class Counsel to determine each Opt-In Plaintiff's alleged damages, if any. On August 6, 2024, the Parties attended a full-day mediation with experienced wage-and-hour mediator Michael

Russell. Unfortunately, the mediation was unsuccessful; however, the Parties continued to engage in settlement negotiations. On November 4, 2024, the Parties attended their second in-person mediation with Dennis Clifford, who specializes in wage and hour litigation. After extensive arms-length negotiations, a full-day mediation, and given the respective costs of litigation, the potential for appeal, and the inherent risks of litigation, the Parties reached an agreement in principle that they believe is fair and reasonable under the circumstances with respect to Plaintiff and the opt-ins. The Parties then spent considerable time negotiating the terms of their confidential Settlement Agreement, which was accepted by Ascension and Plaintiffs by executing the Settlement Agreement. The Parties' Settlement Agreement is attached as Exhibit 1.

Over the life of this litigation, the Parties conducted extensive discovery, filed multiple pleadings with the court, investigated the supporting facts, and thoroughly studied the legal principles applicable to the claims and defenses asserted. Based upon the Parties' investigation, legal evaluation, and assessment of the contested legal and factual issues involved in this action, including the Parties' understanding of the uncertainties of continued litigation and the relative benefits to be conferred upon Plaintiffs pursuant to the Settlement Agreement, the Parties concluded that this settlement is fair, reasonable, adequate, and in the best interests of everyone involved.

Without any admission of liability, Ascension desires to compromise and settle this action, and all claims by Plaintiff and the Opt-In Plaintiffs pertaining to the payment of wages and overtime during the Class Period (as defined in the Settlement Agreement) including, but not limited to, claims under the FLSA, or any other federal, state, or local law for alleged unpaid overtime wages, underpaid wages, unpaid wages, liquidated damages or any other damages, penalties, restitution, attorneys' fees, costs, and interest.

As shown through this Motion, the Parties' proposed settlement is the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after formally and informally

exchanging information, and engaging in substantial negotiations over many months. The terms of the Settlement Agreement are reasonable and appropriate and fair to all Parties involved. Accordingly, Plaintiff asks the Court to approve the Settlement Agreement, settlement notice form, and procedures for sending notice and facilitating a checks-cashed settlement.

### 3. Settlement Terms

As set forth in detail in their Settlement Agreement, the Parties reached a settlement on behalf of Plaintiff and 57 Opt-In Plaintiffs. *See* Exhibit 2, Declaration of Andrew Dunlap at ¶ 24. The Parties agreed to a Gross Settlement Amount (as defined in the Settlement Agreement) encompassing settlement payments to Plaintiff and the Opt-In Plaintiffs, Class Counsel's Attorney Fees and Costs (as defined in the Settlement Agreement), and Enhancement Award to Plaintiff (as defined in the Settlement Agreement).

Pursuant to their Settlement Agreement, the Parties agreed to send Plaintiff and each Opt-In Plaintiff notice of the settlement (attached as Exhibit 3) and a check with their individual damages. The Settlement Award is each Plaintiff and Opt-In Plaintiff's pro rata share of the Net Settlement Amount (as defined in the Settlement Agreement). To join the settlement and receive a Settlement Award, the Parties agreed the Opt-In Plaintiffs must endorse and deposit their Settlement Award during a 180-day check cashing period.

Plaintiffs' pro rata Settlement Awards are based on the number of weeks they worked in a qualifying position during the Class Period. To calculate the Settlement Award, the Parties assign the Plaintiffs one point for each workweek worked. Then, to calculate their proportionate shares of the Net Fund, the Parties:

(1) Add all points for Plaintiffs to obtain the "Total Denominator"; then

(2) Divide the Plaintiffs' individual points by the Total Denominator to obtain each Member's "Portion of the Net Fund"; then

4

  (3) Multiply each Plaintiffs' Portion of the Net Fund by the total amount of the Net Fund to determine the amount of payment to Plaintiffs (their "Individual Payment").

Ex. 1 at ¶ 15. The sum of the Individual Payments for Plaintiff and the Opt-In Plaintiffs will equal the Net Fund. *Id.* Defendant has consented to this methodology. In exchange for the Settlement Award, Plaintiff and the Opt-In Plaintiffs (the "Qualified Claimants") are each releasing any and all wage and hour claims against Ascension from the start of the Class Period through the date they execute their Settlement Claim Form. *Id.* at ¶ 7.

  **4. Argument & Authorities**

    **A. The Parties have entered into a formal Settlement Agreement.**

  The Settlement Agreement attached to this Motion has already been agreed upon and executed by the Parties. *See* Ex. 1. Under the Settlement Agreement, one-half of each Plaintiffs' individual settlement amount will be characterized as wages and the other half as liquidated damages and interest for tax withholding and reporting purposes. *Id.* at ¶ 5. The settlement amounts have been allocated to each Plaintiff based upon their weeks worked within the agreed class period. *Id.* at ¶ 15. In addition to the settlement payment, Ascension will pay the employer's portion of any payroll taxes due. *Id.* at ¶ 6. Plaintiffs will release their wage and hour claims only if they cash the check sent to them by the Administrator. Plaintiffs also ask, consistent with the Parties' Settlement Agreement, that the Court appoint CPT Group, Inc. ("CPT") as the third-party Settlement Administrator. Further, Plaintiffs seek the Court's approval of the following payments: (i) Enhancements Award of $10,000 to Plaintiff McGuire; and (ii) Attorneys' Fees and Costs equal to $25,000.

    **B. The settlement resolves a bona fide dispute between the Parties.**

  "There is a circuit split on whether to extend older Supreme Court cases so as to require judicial approval of all FLSA settlements." *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019). However, where, as here, an employee brings a lawsuit directly against an employer for violating

the FLSA, any settlement must be approved by the court for the settlement to have any res judicata effect. *Krott v. New Directions Behav. Health, L.L.C.*, No. 4:19-CV-00915-DGK, 2022 WL 130978, at *2 (W.D. Mo. Jan. 13, 2022). To approve an FLSA settlement under 29 U.S.C. § 216(b), the court must find that: (1) the litigation involves a bona fide dispute over FLSA provisions; and (2) the proposed settlement is fair and reasonable. *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

A settlement is bona fide if it "reflects a reasonable compromise over issues actually in dispute." *Cooper v. Integrity Home Care, Inc.*, No. 4:16-cv-1293-DGK, 2018 WL 3468372, at *2 (W.D. Mo. July 18, 2018) (Kays, J.), citing *King v Raineri Const., LLC.*, No. 4:14-cv-1828, 2015 WL 631253, at *1 (E.D. Mo. Feb. 12, 2015). "The threshold for establishing whether a bona fide dispute exists between the parties is a low one met where the parties are in disagreement about the wages to be paid and the liability of the issues." *Cooper*, 2018 WL 3468372, at *2, quoting *Grahovic v. Ben's Richardson Pizza*, No. 4:15-cv-1659, 2016 WL 1170977, at *2 (E.D. Mo. Mar. 25, 2016).

There is no question the Parties' Agreement is a result of fiercely contested litigation. The Parties resolved this lawsuit after over a year of litigation only after numerous contested motions, formal and informal discovery, the production of thousands of pages of documents, and two mediations. The Parties vehemently contested the claims and defenses asserted. McGuire claimed Ascension failed to pay her and the putative collective members for all hours worked. *See* First Amended Complaint at ¶¶ 4-6; 65-69. Throughout this litigation, Ascension consistently denied McGuire's allegations. *See generally* Answer. The Parties disputed liability in this case, and only through ongoing arm's-length negotiations were they able to reach a compromise. McGuire continues to believe the claims she seeks to settle here have merit, but she and Plaintiffs' Counsel recognize and acknowledge the uncertain outcome and risk of continuing with this litigation. McGuire also recognizes the expense and complexity of continued proceedings necessary to prosecute the claims

6

through trial as well as the difficulties and delay inherent in FLSA off-the-clock litigation. She also believes the resolution set forth in the Parties' Agreement confers substantial benefits to her and the Opt-In Plaintiffs who choose to participate in the settlement. Based on this evaluation, McGuire and Plaintiffs' Counsel have determined the Parties' Agreement is in McGuire and the Opt-In Plaintiffs' best interests.

Ascension also vigorously denied and continues to dispute all the claims alleged in this litigation and denies any and all allegations of wrongdoing, fault, liability, or damage of any kind to McGuire and the Putative Class Members. Ex. 1 at ¶ 22. Like McGuire, Ascension recognizes the risks and potential costs of continued litigation compared with the benefit of the Parties' proposed Agreement and desires to settle this lawsuit as set forth in the Agreement. Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is no question a bona fide dispute exists. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the bona fide disputes between them.

### C. The settlement represents a reasonable compromise of this litigation.

This Settlement Agreement provides Plaintiffs with a substantial recovery for their alleged unpaid overtime wages, which is commensurate with the disputed nature of Plaintiffs' claims. Ascension disputes Plaintiffs' claims as to both liability and amount of damages.

In determining whether a proposed FLSA settlement is fair and equitable, the Eighth Circuit recently endorsed a "totality of the circumstances" approach, including the consideration of five factors that may be relevant to a district court's evaluation of an FLSA settlement. *See Melgar*, 902 F.3d at 779 (citing with approval *Stainbrook*, 239 F. Supp. 3d at 1126 (identifying five of the many factors a district court may consider "[t]o determine whether settlement terms are fair and equitable to all parties"). The five factors that courts typically consider in evaluating the fairness of an FLSA settlement include: "(1) the stage of the litigation and the amount of discovery exchanged, (2) the

7

experience of counsel, (3) the probability of the plaintiff's success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case." *Stainbrook*, 239 F. Supp. 3d at 1126 (citing *King v. Raineri Constr., LLC*, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015)). Generally, "[a] district court's review is properly limited to the terms precisely addressing the compromised monetary amounts that resolve the pending wage and overtime claims." *Id.* (citing *Carillo*, 51 F. Supp. 3d at 134).

The first factor, the stage of the litigation and the discovery exchanged, favors approval. Prior to settlement, the Parties engaged in extensive written discovery; review of thousands of pages of documents; and worked together to resolve various complex, disputed issues, such as issues regarding damage calculations, amount of time worked, and exemption defenses. And, if the case were not settled, there would be extensive work to come, dispositive motions, depositions, associated discovery disputes, certification briefing, and questions regarding applicability of good faith and willfulness, conditional certification, and decertification under the FLSA. Ex. 2 at ¶ 26.  This case is being resolved before Plaintiff filed any motion for conditional certification based on Plaintiff's counsel's investigation of the case and significant risk of not obtaining nationwide certification. *See, e.g. White v. Baptist Mem. Health Care*, 699 F.3d 869, 876 (6th Cir. 2012) (quoting *Wood v. Mid-America Mgmt. Corp.*, 192 F. App'x 378, 381 (6th Cir. 2006) (proof of work performed during unpaid meal periods was inherently individualized).[1]  As a result, no putative collective members' rights are adversely affected

---

[1] *See also Camesi v. Univ. of Pittsburgh Med. Ctr.*, 2011 WL 6372873 (W.D. Pa. Dec. 20, 2011) (decertifying FLSA claims challenging automatic meal break deduction policy and noting that the *White* decision has "become the prevailing law in the country"); *Camilotes*, 286 FRD 339; *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, 2011 WL 4351631 (W.D.N.C. 2011); *Zivali v. AT&T Mobility*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011) ; *Cason v. Vibra Healthcare*, 2011 WL 1659381 (E.D. Mich. 2011); *Saleen.*, 2009 U.S. Dist. LEXIS 49891; *Creely v. HCR Manorcare, Inc.*, 920 F. Supp. 2d 846 (N.D. Ohio Jan. 31, 2013); *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, 2011 BL 333319 (W.D. Pa. 2011).

So clearly, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiff in particular) recognized that this Settlement Agreement represented a compromise of the range and certainty of their damages. *Id.*

Experience of counsel also favors approval. Counsel on both sides of this dispute are highly experienced in complex litigation and have negotiated settlements in similar class and collective actions. Ex. 2 at ¶ 29. Josephson Dunlap exclusively handles plaintiff-side wage and hour cases across the nation and has negotiated numerous off-the-clock meal break cases like the instant case. *Id.* at ¶¶ 3-4, 28. Likewise, Jackson Lewis is a nationwide defense firm focused on labor and employment law. The competence of counsel also demonstrates a lack of overreaching by the employer.

As to probability of success on the merits, McGuire maintains the validity of her claims and their merits. However, Plaintiff acknowledges a risk remains regarding whether she would ultimately prevail on those claims. Both Parties had considerable risk; Even assuming Plaintiffs could have established liability, Plaintiffs risked recovering nothing to minimal back pay and Defendant risked a significant judgment, including attorneys' fees and liquidated damages.  Further risks include a denial of conditional certification, potential decertification motions, and the possibility of appeal. This settlement avoids all of these risks and provides meaningful relief to Plaintiff and the Opt-In Plaintiffs.

Here, the FLSA settlement is presumptively valid because it is a result of arms-length negotiations by experienced wage and hour counsel. *See, e.g., Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."); *Meller*, 2018 WL 5305562, at *6 (holding that settlement was presumptively valid, given, among other things, "the arm's length negotiations supervised by experienced class action mediator" and "the substantial experience of both plaintiff and defense attorneys"); Ex. 2 at ¶ 30. All Parties are represented by experienced counsel. Class

9

Counsel (as defined in the Settlement Agreement) has served as lead counsel in numerous large-scale wage and hour class/collective actions. *See, e.g., Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's grant of summary judgment in favor of defendant); *Roussell v. Brinker Int'l, Inc.*, 09-20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs). The Parties and their respective counsel agree the Settlement Agreement is a fair and reasonable compromise of the claims alleged by Plaintiffs in light of the procedural posture of the case, the litigation risks, and the litigation costs to all Parties. The Parties have engaged in arm's-length and extended settlement negotiations. Because the Settlement Agreement is a fair and reasonable compromise and adequately compensates the participants for the unpaid overtime hours alleged by Plaintiffs, the Parties seek entry of the submitted Order Approving Settlement. The Settlement Agreement is a fair and reasonable resolution of a bona fide dispute. Ex. 2 at ¶ 34.

Finally, the belief that this settlement is in the best interest of Plaintiffs is an opinion shared by Class Counsel and the class representative.

### D. Attorney fees and litigation expenses do not require Court approval.

Settlement of an FLSA action requires an award of reasonable attorneys' fees. *See Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2014 WL 5099423, at *6 (D. Kan. Oct. 10, 2014). In the Eighth Circuit, district courts have no authority under the FLSA to review settled attorneys' fees so long as the parties negotiated those fees separately from settlement of the merits. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019).

In *Barbee*, the Eighth Circuit held that when parties to an FLSA settlement negotiate reasonable attorneys' fees separately and without regard to the plaintiff's FLSA claim, the amount the employer pays plaintiff's counsel in attorneys' fees "has no bearing on whether the employer has adequately paid

10

its employees in a settlement" and the district court lacks authority to reduce the negotiated attorneys' fees. *Barbee*, 927 F. 3d at 1027 (8th Cir. 2019) (approval of the attorneys' fees is not required under 29 U.S.C. § 216). Since *Barbee*, district courts throughout the Eighth Circuit have declined to evaluate the reasonableness of separately negotiated attorneys' fees. *See Sandoval v. Serco, Inc.*, No. 4:18-cv-01562 JAR, 2021 WL 1521984, at *2 (E.D. Mo. Apr. 16, 2021) (approving FLSA settlement without reviewing reasonableness of attorneys' fees); *Fingerhut v. Ebsco Indust., Inc.*, No. 2:20-cv-02062, 2021 WL 640910, at *2 (W.D. Ark. Feb. 18, 2021) (same); *Withrow v. Texarkana Behavioral Assocs., L.C.*, No. 5:19-cv-05220, 2021 WL 608730, at *2 (W.D. Ark. Feb. 16, 2021) (district court lacked authority to evaluate attorneys' fees in FLSA action, even when the requested fees appeared unreasonable, when the fees were negotiated separately from the merits).

While the Court retains authority to ensure that attorneys' fees were in fact negotiated separately without regard to the plaintiff's FLSA claim, courts in the Eighth Circuit rely on the representations of counsel when the agreed-upon attorneys' fees do not lead the court to determine that the settlement agreement itself is unreasonable. *Sandoval*, 2021 WL 1521984, at *2; *see also Donoho*, 2019 WL 5213023, at *2 ("Because the agreed fees are not so disproportionately exorbitant alone to indicate collusion when compared to the compensation paid to Plaintiffs, the settlement agreement – including attorneys' fees – will be approved without inquiry or comment into the reasonableness of the attorneys' fees.").

Here, Plaintiffs' counsel negotiated their attorneys' fees and costs after negotiating a recovery for Plaintiff and the Opt-In Plaintiffs. *See* Ex. 1, Settlement Agreement, at ¶ 13(b). The attorneys' fees were negotiated separately and without regard to the Plaintiffs' recovery. Thus, the Court cannot and should not review the attorneys' fees and litigation costs negotiated by counsel.

### E.  The Court should approve the Enhancement Award.

11

A court may approve incentive awards to class representatives or other participating plaintiffs who materially contributed to the lawsuit's success. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002). These awards typically range between $500 and $10,000 depending upon the nature of the plaintiff's contribution and time investment. *Stewart v. USA Tank Sales & Erection Co., Inc.*, No. 12-05136-CV-SW-DGK, 2014 WL 836212, at *8 (W.D. Mo. Mar. 4, 2014).

McGuire took a substantial risk in bringing the claims relating to Defendant's alleged wage and hour violations. In doing so, Plaintiff (like all FLSA litigants) was concerned she could face potential retaliation from prospective employers and Defendant. Moreover, McGuire expended significant effort and time in educating Class Counsel regarding Plaintiff's job experiences and Ascension's policies and procedures. She reviewed and answered formal written discovery and also participated in telephone conferences with Class Counsel and their staff over the course of the litigation.

Because McGuire invested significant personal effort in representing the interests of the Potential Class Members and worked diligently to ensure Plaintiffs could recover the wages they are allegedly due, the proposed $10,000 Enhancement Awards agreed to by the Parties is reasonable to compensate her.

**5. Conclusion**

Plaintiff and Class Counsel obtained a successful recovery on behalf of the Opt-In Plaintiffs. The Settlement Agreement reached will provide considerable relief to all Potential Class Members who opt-in to this action and the settlement. The Court should approve the Settlement Agreement reached by the Parties, approve the method and forms to facilitate the settlement as outlined in the Settlement Agreement and attached as exhibits, approve Class Counsel's attorneys' fees and costs, approve CPT as the Settlement Administrator, and approve the Enhancement Award. Upon the approval of the Settlement Agreement, the Court should dismiss this lawsuit with prejudice.

Dated: June 27, 2025

Respectfully submitted,

By: /s/ *Andrew W. Dunlap*
    Michael A. Josephson*
    Andrew W. Dunlap*
    Alyssa White
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    Phone: 713-352-1100
    Fax: 713-352-3300
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    awhite@mybackwages.com

    Richard J. (Rex) Burch*
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    Phone: 713-877-8788
    Fax: 713-877-8065
    rburch@brucknerburch.com

    Scott D. Gilchrist (#16720-53)
    **COHEN & MALAD LLP**
    *Local Counsel for Plaintiff*
    One Indiana Square, Suite 1400
    Indianapolis, IN 46204
    Phone: (317) 636-6481
    sgilchrist@cohenandmalad.com

    William C. (Clif) Alexander
    Austin W. Anderson
    **ANDERSON ALEXANDER, PLLC**
    101 N. Shoreline Blvd., Suite 610
    Corpus Christi, Texas 78401
    361-452-1279 – Telephone
    361-452-1284 – Facsimile
    clif@a2xlaw.com
    austin@a2xlaw.com

    **ATTORNEYS FOR MCGUIRE AND THE PUTATIVE CLASS MEMBERS**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was served via electronic service on June 27, 2025, on all counsel of record.

                                                                     /s/ *Andrew W. Dunlap*
                                                                     Andrew W. Dunlap